UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


DIANNA NIDY, individually and
on behalf of others similarly
situated,

      Plaintiff,

v.                       Civil Action no. 2:18-cv-01061

U.S. BANCORP GOVERNMENT LEASING
AND FINANCE, INC., as Trustee for
the benefit of the holders of
COMM 2013-CCRE12 Mortgagee Trust
Commercial Mortgage Pass-Through
Certificates; and WELLS FARGO
COMMERCIAL MORTGAGE SERVICING,

      Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>

      Pending is the motion to dismiss filed on August 31,

2018 by defendants U.S. Bancorp Government Leasing and Finance,

Inc. ("U.S. Bank") and Wells Fargo Commercial Mortgage Servicing

("Wells Fargo").[1] Also pending is the plaintiff's motion to

refer this civil action to the United States Bankruptcy Court

for the Southern District of West Virginia, filed September 7,

---

[1] The defendants assert that the plaintiff has incorrectly named
each of them in this lawsuit and that the proper parties are (1)
U.S. Bank, National Association, as Trustee for the benefit of
the holders of COMM 2013-CCRE12 Commercial Mortgage Pass-Through
Certificates and (2) Wells Fargo Bank, National Association.
Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem."), ECF No. 9, at 1
n.1.

2018,[2] for ultimate transfer to the United States Bankruptcy Court for the Northern District of West Virginia where there is pending the bankruptcy case of Tara Retail Group, LLC.

## I.    Background

"On or about September 17, 2013, UBS Real Estate Securities, Inc. ('Original Lender') lent $13,650,000.00 (the 'Loan') to Tara Retail Group, LLC." Compl. ECF No. 1, ¶ 5. As evidence of the Loan, Tara Retail Group executed a promissory note (the "Note") and Loan Agreement (the "Loan Agreement") on that same date for the same amount in favor of the Original Lender. Id. "As security for the repayment of the Loan," the borrower executed a Deed of Trust and Security Agreement ("Deed of Trust") to a trustee for the benefit of the Original Lender. Id. ¶ 6. Under the Deed of Trust, the borrower "conveyed certain real estate and personal property, . . . known as the Crossings Mall located at 223 Crossings Mall Road, Elkview, West Virginia 25071 for the benefit of Original Lender." Id. Also on September 17, 2013, Tara Retail Group executed an Assignment of Leases and Rents ("ALR") in favor of the Original Lender.

_____

[2] On December 10, 2018, plaintiff filed a motion to provide additional authority on its motion to transfer this matter to the United States Bankruptcy Court.  ECF No. 21.  The defendants moved to strike, and alternatively responded to plaintiff's motion therein, on December 26, 2018.  ECF No. 22.

Id. ¶ 8.  The ALR granted to borrower a "revocable license to collect, receive, use and enjoy the Rents, as well as other sums due under the Lease Guarantees," but that license is automatically revoked upon the occurrence of an "Event of Default."  ALR, ECF No. 8-3, at §§ 2.1, 3.1.

At some unspecified later time, the Original Lender assigned the Note, the Deed of Trust, and the ALR to defendant U.S. Bank "as Trustee for the Benefit of the Holders of Comm 2013-CCRE12 Mortgagee Trust Commercial Mortgage Pass-Through Certificates."  Compl., ECF No. 1, ¶ 9.

It is alleged that defendant Wells Fargo "is holder of certain escrow accounts, including the maintenance and repair account held for the protection of the secured property, 'Elk Crossings Mall.'"  Id. ¶ 3.  The secured property is leased by Tara Retail Group, LLC, to approximately twenty-one tenants such as "Kmart, Kroger and McDonald's."  Id. ¶ 7.  Wells Fargo is named as Master Servicer in the Pooling and Servicing Agreement. Id. ¶ 17.

The plaintiff notes that the Pooling and Servicing Agreement states that Wells Fargo "shall use reasonable efforts consistent with the Servicing Standard to . . . advance the amount of any shortfall as a Property Advance unless the Master Servicer determines in accordance with the Servicing Standard

that such Advance would be a Nonrecoverable Advance . . . ."
Id. The Standard of Care in the Pooling and Servicing Agreement
also states that Wells Fargo should act to "diligently service
and administer the Loans in the best interests of [and] for the
benefit of all Certificate Holders."  Id.

The court notes that the Pooling and Servicing
Agreement is one between and for the benefit of those on the
lender side of the transaction described above and consists of
the following entities: Deutsche Mortgage and Asset Receiving
Corporation (the "Depositor"), Wells Fargo (the "Master
Servicer" and the "Certificate Administrator, Paying Agent and
Custodian"), U.S. Bank (the "Trustee"), LNR Partners, LLC (the
"Special Servicer"), and Park Bridge Lender Services LLC (the
"Operating Advisor").  ECF No. 8-4, at 1.

The plaintiff further alleges that there was a
covenant under the "lease agreement" between the debtor and one
of its tenants and "the Standard of Care in the Pooling and
Servicing Agreement" to maintain and preserve the property and
an "agreement to maintain the property so as to ensure that the
debt under the loan agreement would be maintained."  Compl., ECF
No. 1, ¶ 26.  Plaintiff also claims that "[u]nder the terms of
the leases, the common areas were to be maintained for the
benefit of customers, employees, licensees and invitees of the

4

tenants." Id. The plaintiff attempts to conflate the
agreements between the debtor and the lender with those between
the debtor and its tenants, despite those agreements having
different purposes and parties.

The Lease Agreement referenced by the plaintiff in her
complaint is between Tara Retail Group (Landlord) and Anytime
Fitness (Tenant) and states that the landlord "covenant[s] that
Tenant on paying the rent and performing the conditions and
covenants herein contained, shall and may peaceably and quietly
have, hold and enjoy the Premises." Id. ¶ 14. The Lease
Agreement also prescribes that the "Landlord shall keep the
structural portions of the premises and the Shopping Center, as
applicable, in reasonable repair." Id.

"On or about January 16, 2016, the Defendant Wells
Fargo, as agent and holder of the maintenance escrow account,
was contacted by Gold Coast Partners LLC,[3] requesting the
expenditure of twenty four thousand dollars, for the repair of
the culvert over which the only entrance to the shopping center

_____

[3] It is not specified in the complaint what Gold Coast Partners
LLC is or how it is related to the agreements listed above. In
the quoted note that follows, Gold Coast Partners seems to refer
to itself as the landlord which, instead, appears to be Tara
Retail Group. The defendants indicate in their memorandum in
support of their motion to dismiss that Gold Coast Partners is
the debtor's property manager. Defs.' Mem., ECF No. 9, at 3.

passed, and the repair of the 'dirt cliff' behind K Mart." <u>Id.</u> ¶ 11. This request stated:

> If these issues are not resolved immediately the only entrance to the center could collapse and dirt could continue falling behind Kmart both scenarios could expose us, the Landlord, to personal and injury liability cases.

<u>Id.</u> Wells Fargo did not authorize the repairs as requested, and no other defendant independently offered to pay for the repairs. <u>Id.</u> ¶ 12. The plaintiff asserts that the tenants were required to pay into that maintenance escrow account. <u>See id.</u> ¶ 30.

On June 23, 2016, the Elk Crossings Mall and the surrounding area was flooded. <u>Id.</u> ¶ 19. "The only point of access to the Crossings Mall shopping center was asphalt covered, dirt and gravel fill over a culvert. During the flood . . . the culvert, fill and paving were washed away." <u>Id.</u> ¶ 20. "The culvert was replaced with a bridge and the tenants began restoration of their businesses and equipment in August, 2017." <u>Id.</u> ¶ 21.

The plaintiff and class representative, Dianna Nidy, was employed by Kmart Corporation, a tenant of the Crossings Mall shopping center. <u>Id.</u> ¶ 1. She lost her employment when the center closed as a result of the loss of access. <u>Id.</u> Ms. Nidy represents the proposed class of plaintiffs who consist of "employees of tenants who suffered loss of income and benefits

as a result of flooding caused or contributed to by the Defendants." Id. at 15, ¶ 26-27.

The plaintiff initiated this action in this court on June 21, 2018. In her complaint, plaintiff asserts four causes of action against both defendants: (1) "Breach of Duty Under Loan Documents Including the Servicing Standard"; (2) "Breach of Fiduciary Duty Under the Power of Attorney Provision of the Assignments of Leases and Rents and the Structure of the Financing Transaction"; (3) "Tortious Interference with a Business Relationship"; and (4) "Breach of General Duty of Care." A fifth claim is simply a request for punitive damages. Id. at 11-15. Each of these causes of action is based on plaintiff's belief that defendants breached a duty by failing to distribute money, out of a maintenance fund into which the tenants of Elk Crossings Mall were obligated to contribute, which led to the closing of the businesses on the premises, thereby harming the plaintiff and those similarly situated to her.

The defendants have moved to dismiss each of plaintiff's claims on the grounds that she has failed to state a claim upon which relief might be granted. Before responding to defendants' motion, the plaintiff moved to refer this civil

action to the United States Bankruptcy Court.  Both motions have
been fully briefed.

## II.  Jurisdiction

The plaintiff neglected to include in her complaint
the basis for federal jurisdiction in this case.  However, there
are sufficient facts available for the court to assert
jurisdiction over this matter pursuant to 28 U.S.C. § 1332.
First, it appears that Ms. Nidy is a West Virginia resident
inasmuch as it is claimed she worked in Kanawha County, West
Virginia at the time of the incident.  Next, the plaintiff
states that U.S. Bank's legal address is in Ohio, see Compl.,
ECF No. 1, ¶ 4, and Wells Fargo does not assert that it is
principally located or was incorporated in West Virginia.  For
these reasons, it appears as though there is complete diversity
between the parties.

Regarding the amount in controversy, the plaintiff
asserts that she lost income and benefits from her employment
while the businesses at Elk Crossings Mall were closed from June
2016 until August 2017.  See id. ¶¶ 19, 21, 47.  She also
asserts a claim for punitive damages against the defendants.
Id. ¶ 45.  Accordingly, it is apparent that the amount in
controversy exceeds $75,000.  For these reasons, the court will

rule on the defendants' motion to dismiss inasmuch as it has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332.

### III. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at

570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint. . . .'" Erickson, 551 U.S. at 94 (quoting Twombly, 550 U.S. at 555-56); see also S.C. Dept. of Health and Envt'l Control v. Commerce and Indus. Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).

"A motion to dismiss tests the sufficiency of a complaint," Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013), "and [the court's] evaluation is thus generally limited to a review of the allegations of the complaint itself. However, [the court] also consider[s] documents that are explicitly incorporated into the complaint by reference . . . ." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

## IV.  Discussion


### A. "Breach of Duty Under Loan Documents Including the Servicing Standard"


While not clear from the complaint what cause of action is being asserted here, the plaintiff, in her response to the defendants' motion to dismiss, acknowledges that this first count is "a claim for breach of contract."  Pl.'s Resp., ECF No. 12, at 7.

In the complaint, the plaintiff contends

> [t]he failure to repair the culvert in January, 2016, and replace it in June, 2016 was a breach of the covenant to maintain and preserve the property under the lease agreement, the Standard of Care in the Pooling and Servicing Agreement . . . , the agreement to maintain the property so as to ensure that the debt under the loan agreement would be maintained, and other provisions of the loan documentation.

Compl., ECF No. 1, ¶ 26.  She further alleges that "[u]nder the terms of the leases, the common areas were to be maintained for the benefit of customers, employees, licensees and invitees of the tenants."  Id.  The plaintiff also states that "as an employee of a lease holder," she "has the benefit of the lease contract under assignment to the Defendants, and is beneficiary of the duties set forth therein."  Id. ¶ 27.  It appears from these allegations the plaintiff concedes that neither she nor

any other employee of a tenant of Elk Crossings Mall is a party to any of the relevant contracts.

West Virginia Code § 55-8-12 states:

> If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.

The Supreme Court of Appeals of West Virginia has "repeatedly applied this statute and ha[s] consistently given force to the 'sole benefit' requirement." E. Steel Constructors, Inc. v. City of Salem, 209 W. Va. 392, 403, 549 S.E.2d 266, 277 (2001).

Here, the plaintiff has only stated that the "common areas were to be maintained for the benefit of customers, employees, licensees and invitees of the tenants." Compl., ECF No. 1, ¶ 26. In her response, the plaintiff also presents for the first time portions of Kmart's lease, which purportedly was assigned to the defendants in the ALR (Assignment of Leases and Rents) and provides that the landlord grants to "Tenant's agents, employees, customers, licensees and Invitees . . . the use of parking areas, common areas . . . , roadways, sidewalks and access ways to public streets and highways." Pl.'s Resp., ECF No. 12, at 3 n.2.

Plaintiff also states that another tenant, "The Elswick Company, LLC, d/b/a Anytime Fitness," was directed by Tara to pay rent directly to Wells Fargo, and that the rent included a contribution to a common area maintenance fund. Pl.'s Resp., ECF No. 12, at 3-4. She further contends that other tenants were required to pay a certain amount to Wells Fargo for common area maintenance. Id. at 4.

First, the plaintiff never contends that she or those similarly situated constitute the sole beneficiary of the loan documents. Further, the terms of certain loan documents expressly state that there is no third-party beneficiary. Specifically, the Loan Agreement states, in part:

> This Agreement and the other Loan Documents are for the sole and exclusive use of Borrower and Lender and may not be enforced, nor relied upon, by any other Person. Nothing contained in this Agreement or the other Loan Documents shall be deemed to confer upon any Person other than Borrower and Lender any right to insist upon or to enforce the performance or observance of any of the terms, covenants and conditions contained herein or therein.

Loan Agreement, ECF No. 8-1, at § 11.31(b). The provisions of the Loan Agreement and other loan documents, including the provision set forth above, were incorporated by reference into both the Deed of Trust and the ALR. See Deed of Trust, ECF No. 8-2, § 3.2; ALR, ECF No. 8-3, § 2.3. Finally, the Pooling and Servicing Agreement provides:

> [N]o Person other than a party to this Agreement, any
> Mortgage Loan Seller, any Initial Purchaser, any
> Underwriter or any Certificateholder shall have any
> rights with respect to the enforcement of any of the
> rights or obligations hereunder. Without limiting the
> foregoing, the parties to this Agreement specifically
> state that no Borrower, Manager or other party to a
> Mortgage Loan is an intended third-party beneficiary
> of this Agreement.

Pooling and Servicing Agreement, ECF No. 8-4, § 11.10.

Even if the defendants did breach the terms of the loan documents or pooling agreement, the plaintiff has offered no allegation of fact to support the contention that the contracts were entered into for the "sole benefit" of plaintiff or those similarly situated to her. Indeed, the last two provisions quoted above could hardly be plainer in establishing the sharply limited scope of the beneficiaries of those documents and agreements. Plaintiff's breach of contract claim is dismissed.

## B. Breach of Fiduciary Duty

The plaintiff asserts that each of the defendants

> assumed a fiduciary duty to the Plaintiff, through the
> structure of the financing transaction, including but
> not limited to the collection of rents, including
> funds for costs of maintenance by Wells Fargo, and the
> Power of Attorney set forth in the [ALR] . . . to
> maintain reasonably functional commercial premises for
> the transaction of the Plaintiff's business. The
> Defendants further assumed the duties to employees of
> the tenants under the contracts.

*       *       *

> The refusal of the Defendants and each of them, to
> maintain the premises in a reasonably functional
> commercial condition was a breach of its obligations.

Compl., ECF No. 1, ¶¶ 30, 32.

"The fiduciary duty is a duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person.  It is the highest standard of duty implied by law."  Elmore v. State Farm Mut. Auto. Ins. Co., 202 W. Va. 430, 435, 504 S.E.2d 893, 898 (1998) (internal citations and quotations omitted).  "As a general rule, a fiduciary relationship is established only when it is shown that the confidence reposed by one person was actually accepted by the other, and merely reposing confidence in another may not, of itself, create the relationship."  Id. at 436, 504 S.E.2d at 899 (citations omitted).  "In West Virginia, the required elements of a cause of action for breach of a fiduciary duty are three-fold: (1) existence of the fiduciary relationship, (2) its breach, and (3) damage proximately caused by the breach."  Wittenberg v. First Indep. Mortg. Co., No. 3:10-cv-58, 2011 WL 1357483, at *17 (N.D.W. Va. Apr. 11, 2011) (citing State ex rel. Affiliated Constr. Trades Found. v. Vieweg, 205 W. Va. 687, 701, 520 S.E.2d 854, 868 (1999) (Maynard, J., concurring)).

The plaintiff alleges that the Power of Attorney provision in the ALR provides a basis for the fiduciary duty owed by defendants to plaintiff. That provision states that the Borrower assigned to the Lender, among other rights:

> Borrower's irrevocable power of attorney, coupled with an interest, to take any and all of the actions set forth in Section 3.1 of this Assignment and any or all other actions designated by Lender for the proper management and preservation of the Property.

Compl., ECF No. 1, ¶ 18. In her response, the plaintiff also refers to the Deed of Trust which states:

> Borrower acknowledges that Lender has a valid interest in maintaining the value of the property so as to ensure that should Borrower default in the repayment of the Debt or the performance of the Other Obligations, lender can recover the Debt by the sale of the property.

Pl.'s Resp., ECF No. 12, at 6; Compl., ECF No. 1, ¶ 15.

However, neither of these provisions in the Loan Agreements creates any duty that defendants might owe to unknown employees of the tenants of the "Borrower." The ALR additionally states that the Lender has no such duty under the agreement:

> This Assignment shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Lender. Lender shall not be liable for any loss sustained by Borrower resulting from . . . any other act or omission of Lender in managing the Property after an Event of Default. Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guarantees or under or

16

> by reason of this Assignment and Borrower shall
> indemnify Lender for, and hold Lender harmless from,
> any and all liability, loss or damage which may or
> might be incurred under the Leases, any Lease
> Guaranties or under or by reason of this Assignment
> and from any and all claims and demands whatsoever
> including the defense of any such claims or demands
> which may be asserted against Lender by reason of any
> alleged obligations and undertakings on its part to
> perform or discharge any of the terms, covenants or
> agreements contained in the Leases or any Lease
> Guaranties.

ALR, ECF No. 8-3, at § 4.1. Moreover, as set forth at p. 11-14, _supra_, the plaintiff and those similarly situated to her are not parties to, nor are they the beneficiaries of, any of the written agreements at issue.

Here, the plaintiff is merely an employee of a tenant whose rent had been assigned to a creditor of the tenant's landlord, Tara Retail Group. As noted above, there is no contractual provision that establishes a fiduciary duty, and the relatively attenuated relationship between the plaintiff and the defendants is insufficient to create such a duty.

Inasmuch as the plaintiff has pled no facts that indicate there was a fiduciary relationship between the plaintiff and the defendants, this claim is dismissed.

**C. Tortious Interference with a Business Relationship**

The plaintiff asserts that she had a business relationship with her employer, that the defendants "acting intentionally, failed to maintain access to the property, thereby depriving the Plaintiff of their employment, and the benefits thereof," and that the defendants knew of the nature of the business of plaintiff's employer. Compl., ECF No. 1, ¶¶ 34-36. In her response, the plaintiff also contends that Wells Fargo "knowingly disregarded [its duties under the loan documents] and intentionally refused to maintain the crossing, then, once it collapsed, refused to replace it." Pl.'s Resp., ECF No. 12, at 11.

The West Virginia Supreme Court has stated that in order to establish a claim for tortious interference a plaintiff must show: "(1) existence of a contractual or business relationship or expectancy; (2) <u>an intentional act of interference by a party outside that relationship or expectancy</u>; (3) proof that the interference caused the harm sustained; and (4) damages." <u>Hatfield v. Health Mmgt. Assocs. of W. Va.</u>, 223 W. Va. 259, 267, 672 S.E.2d 395, 403 (2008) (per curiam) (emphasis in original). It is undisputed that the plaintiff had a business relationship with her employer, Kmart.

The plaintiff has failed to plead facts to meet the second element necessary to establish a tortious interference with business relationship.  Here, the plaintiff argues that Wells Fargo intentionally refused to pay to repair the culvert both before and after the flood.  The court does not find this to be an "intentional act of interference."  Rather, it was at most a failure to act.

The Restatement (Second) of Torts § 766 (Oct. 2018 Update), defines intentional interference with performance of a contract by a third person as follows:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

"The essential thing is the intent to cause the result.  If the actor does not have this intent, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other."  Id. cmt. h.[4]

_____

[4] The intent element of this claim can be met "if the actor acts for the primary purpose of interfering with the performance of the contract, and also if he desires to interfere."  The element is also met when the actor "does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a

In evaluating the elements for tortious interference under California law, the Court of Appeals for the Ninth Circuit noted that the "[m]otive or purpose to disrupt ongoing business relationships is of central concern in a tortious interference case." <u>Rickards v. Canine Eye Registration Found., Inc.</u>, 704 F.2d 1449, 1456 (9th Cir. 1983) (citing <u>Lowell v. Mother's Cake & Cookie Co.</u>, 79 Cal. App. 3d 13, 18 (1978)).  Similarly, the Second Circuit has emphasized that a claim for tortious interference with a contract in New York includes an "intentional procurement of the third-party's breach of the contract without justification." <u>Premium Mortg. Corp. v. Equifax, Inc.</u>, 583 F.3d 103, 107 (2d Cir. 2009) (quoting <u>Lama Holding Co. v. Smith Barney Inc.</u>, 646 N.Y.S.2d 76 (N.Y. 1996)).

The United States Bankruptcy Court for the Northern District of West Virginia has interpreted the law in West Virginia in a manner consistent with the Restatement and the cases noted above:

> By including "of," [in the phrase "intentional act of interference,"] the <u>Hatfield</u> court makes clear that an act that leads to interference by coincidence is insufficient. Moreover, "[d]efendants are not liable for interference that is negligent rather than intentional...." Otherwise, the law would simply require "an intentional act that led to interference."

result of his action."  Restatement (Second) of Torts § 766 cmt. j.

_In re 201 N. George St., LLC_, 551 B.R. 786, 792 (Bankr. N.D.W.
Va. 2016) (citing _Hatfield_ 223 W. Va. at 267, 672 S.E.2d at 403)
(internal citations omitted)).

The request made by Gold Coast Partners for funds to
repair the culvert only notified the defendants that if the
culvert and "dirt wall" were not repaired, the entrance to the
shopping center could collapse, which might expose the landlord
to "personal and injury liability cases."  Compl., ECF No. 1, ¶
11.  While the defendants, or either of them, may have acted or
failed to act intentionally with respect to repair of the
culvert, there is no allegation that the defendants did so
intentionally to interfere with the business relationship
between the plaintiff and her employer, a tenant of the
property.[5]

Inasmuch as the defendants are not alleged to have
intended to interfere with the business relationship between
plaintiff and her employer, the claim for tortious interference
with business relations is dismissed.

---

[5] The plaintiff only contends that the nature of the businesses
of the tenants were known to the defendants and that they
intentionally failed to maintain access to the property,
"thereby depriving the Plaintiff" of her employment.  Compl.,
ECF No. 1, at ¶¶ 35-36.

D. Breach of General Duty of Care

In the fourth count the plaintiff contends that the defendants breached a duty arising under both "the Servicing Standard" as well as the "general duty of all persons." Id. ¶ 39. Under both duties, the plaintiff contends that the defendants' refusal "to maintain the premises in a reasonably functional commercial condition was a breach of its duty." Id. ¶ 42.

The defendants move to dismiss this claim on the grounds that plaintiff has not and cannot plead that defendants owed her a duty of care. Defs.' Mem., ECF No. 9, at 10.

In her response, the plaintiff cites Syllabus Point 9 of Aikens v. Debow, 208 W. Va. 486, 541 S.E.2d 576 (2000):

> An individual who sustains economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor.

Pl.'s Resp., ECF No. 12, at 10-11 (quoting Syl. Pt. 9, Aikens, 208 W. Va. at 489, 541 S.E.2d at 579). She also cites the

supreme court's description of the circumstances under which

such a duty might arise:

> The existence of a special relationship will be
> determined largely by the extent to which the
> particular plaintiff is affected differently from
> society in general. It may be evident from the
> defendant's knowledge or specific reason to know of
> the potential consequences of the wrongdoing, the
> persons likely to be injured, and the damages likely
> to be suffered. Such special relationship may be
> proven through evidence of foreseeability of the
> nature of the harm to be suffered by the particular
> plaintiff or an identifiable class and can arise from
> contractual privity or other close nexus.

Id. (quoting Aikens, 208 W. Va. at 499, 541 S.E.2d at 589).

The plaintiff does not further argue the point that a
special relationship existed between her and the defendants. In
her complaint, the plaintiff only states, conclusionarily, that
"[t]here existed further at all times relevant herein a special
relationship under the leases between the Plaintiff's employer
and the Defendants."  Compl., ECF No. 1, ¶ 40.

Here, there is no physical injury, no contractual
relationship and no close nexus, nor is there any apt allegation
of the basis of a special relationship between the plaintiff and
any defendant.  The plaintiff is thus unable to show a viable
claim on that ground.  Accordingly, plaintiff's negligence claim
is dismissed.

### E. Punitive Damages

The complaint argues that the defendants' conduct was "intentional, willful and wanton, and in disregard of the civil rights of others, and justifies the award of punitive damages." Id. ¶ 45. A separate cause of action for punitive damages is not recognized by the State of West Virginia. Leo v. Beam Team Inc., No. 2:10-CV-00534, 2012 WL 1111374, at *5 (S.D.W. Va. Apr. 2, 2012) (citing Roney v. Gencorp., 431 F. Supp. 2d 622, 638 (S.D.W. Va. 2006)).

In plaintiff's response, she contends that the intent of this cause of action "is to incorporate the preceding paragraphs by reference," presumably to assert a claim for punitive damages as to each of the four causes of action. Each of those causes of action having been dismissed, the request for punitive damages is moot.

### V.    Conclusion

For all the foregoing reasons, it is ORDERED that defendants' motion to dismiss the plaintiff's complaint be, and hereby is, granted. It is further ORDERED that plaintiff's motion to refer this civil action to the United States Bankruptcy Court be, and hereby is, denied as moot.

It is also **ORDERED** that plaintiff's motion to provide additional authority in support of her motion to refer this action to the bankruptcy court, as well as defendants' motion to strike plaintiff's motion to provide additional authority, be, and hereby are, denied as moot.

The Clerk is directed to transmit this memorandum opinion and order to all counsel of record.

ENTER: June 19, 2019

John T. Copenhaver, Jr.
Senior United States District Judge